THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 18-245-KD-MU-1 |
| | ) | |
| OUNLA VANNAVYLAYTHONG, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Ounla Vannavylaythong moves to suppress a firearm discovered in his room after officers entered without a warrant and without his consent. The exigent circumstances exception to the Fourth Amendment's general prohibition against warrantless searches and seizures may justify the warrantless entry if officers had an objectively reasonable concern for their safety. After considering Vannavylaythong's motion, the Government's response, evidence and argument submitted during the motion hearing,[1] and supplemental briefing, the Court concludes the exception does not apply. The motion is therefore **GRANTED** and the firearm is suppressed.

**I.    BACKGROUND**

The grand jury returned an indictment against Vannavylaythong in August 2018. The indictment charged him with one count: possession of a firearm by a prohibited person (felon), in violation of 18 U.S.C. § 922(g)(1).

The following facts led to Vannavylaythong's arrest and indictment.[2] On November 26, 2017 at approximately 10:30 a.m., law enforcement officials discovered Somphith

---

[1] Those present for the hearing included Assistant United States Attorney Christopher Bodnar (standing in for AUSA Gloria Bedwell), Defendant, and Defendant's counsel, Peter Madden.
[2] Captain Paul Burch testified to this factual background during the motion hearing. The Court finds Captain Burch's testimony credible.

Khenmanivanh's body in a car. The car sat behind an abandoned house. Officers discovered the car in an area officers consider drug-infested, meaning an area frequented by drug dealers and often the scene of drug-related violence. Another indication that the death may have been drug-related, according to the officers, was the type of murder. Khenmanivanh was shot multiple times.

Law enforcement immediately began investigating the murder. Initially, the officers discussed Khenmanivanh's death with his family. The family informed officers that Vannavylaythong and Khenmanivanh were friends and together often.[3] The family also told officers that both were involved in drugs, specifically marijuana distribution. After speaking to Khenmanivanh's family, the officers decided to speak with Vannavylaythong. The officers did not consider Vannavylaythong a suspect, but rather believed he might possess information that would be helpful in reconstructing Khenmanivanh's final hours. The officers had no information that Vannavylaythong might be armed or dangerous.

Officers learned Vannavylaythong resided in Grand Bay, Alabama. The officers first arrived at a location officers understood to be a place Vannavylaythong frequently visited. As officers approached, they observed several men in a car. Officers smelled a strong marijuana odor, and at least one of the men attempted to briskly leave. One man held his waistband, and once officers detained him, they discovered that he possessed a gun. Officers discovered additional firearms in the car. The officers asked the men where Vannavylaythong could be located, and one of the individuals pointed to a house across the street. The Government presented no evidence that this house or the men law enforcement encountered were connected to the house across the street.

---

[3] During cross examination, Defendant's counsel stated that Ounla Vannavylaythong has a brother with a similarly pronounced name, Eun. Defense counsel implied that police might have confused Eun with Ounla and that Eun was Khenmanivanh's good friend. Whether Eun or Ounla was closely associated with Khenmanivanh does not materially affect the ultimate resolution.

The officers proceeded to the house across the street and knocked on the front door. The house is depicted below.




(Doc. 24). Another individual answered the door. Several men were present, including several who did not speak English. The officers spoke (through another man acting as the interpreter) with someone officers believed to be the homeowner. The officers asked to speak to Vannavylaythong, and the homeowner indicated Vannavylaythong stayed in a utility room and proceeded to accompany officers to the location on the back side of the carport. The aerial photograph depicts the utility room, which is situated on the house's left side from the perspective of facing the front of the house.

The utility room is extremely small. As Captain Paul Burch described, no more than two or three people could comfortably stand in the room together. It is connected to the home, but it cannot be accessed from the home. Instead, to access it one must leave the home and proceed to the room's single door. The utility room had both a futon and a water heater.

3

As Captain Burch approached the utility room, its door was ajar. Captain Burch testified the opening was approximately six to eight inches.[4] He testified that he could see through the open door.

Captain Burch knocked on the door and called out to Vannavylaythong, asking him to come out and speak to the officers. Although it was open, the door did not shift easily. As a result, it remained approximately six to eight inches open even after Captain Burch knocked. As he knocked, Officer Burch heard something inside that led him to believe a person was moving. In response to Captain Burch's request, Vannavylaythong attempted to close the door but Captain Burch instinctively prevented it from fully closing.

Captain Burch simultaneously observed an arm reach down towards the bottom of the futon. Captain Burch could not see what Vannavylaythong was reaching for, but he suspected it was a weapon.  This reach alarmed Captain Burch. He testified that he feared for the officers' safety. Eventually, Vannavylaythong stopped pushing the door and officers entered the room. At this point, officers immediately observed three to four inches of a gun barrel protruding from beneath the futon.

## II.     RELEVANT LAW

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" "The warrantless search of a home is 'presumptively unreasonable.'" United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (quoting Payton v. New York, 445 U.S. 573, 586 (1980)). "The rule of Payton [v. New York, 445 U.S. 573 (1980),] is that there is 'a firm line at the entrance to the house,' and absent

---

[4] Captain Burch testified at one point that the door was six to eight inches ajar, but later stated "I think six to eight, 10 inches would be fair."

exigent circumstances 'that threshold may not reasonably be crossed without a warrant.'" Knight v. Jacobson, 300 F.3d 1272, 1277 (11th Cir. 2002) (quoting Payton, 445 U.S. at 590).

"A warrantless search is allowed, however, where both probable cause and exigent circumstances exist." Tobin, 923 F.2d at 1510.[5] "The term 'exigent circumstances' refers to a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action. Such is the case when resort to a warrant might endanger the police or the public." United States v. Burgos, 720 F.2d 1520, 1526 (11th Cir. 1983). "[R]isk of harm to . . . the police[,]" Holloway, 290 F.3d at 1334, is a recognized exigent circumstance. See also Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298–99 (1967) ("The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others."); United States v. Quarterman, 877 F.3d 794, 797 (8th Cir. 2017) ("Also justifying warrantless entry or search is an objectively reasonable belief of a threat to officer safety."); United States v. Poe, 462 F.3d 997, 1000 (8th Cir. 2006) ("A legitimate concern for officer safety . . . may constitute an exigent circumstance, and a warrantless entry into a residence may be justified if an officer has a reasonable fear of harm.").

> To justify a warrantless arrest in a suspect's home, the government must show both probable cause and the presence of exigent circumstances. "The exigent circumstances exception encompasses situations such as hot pursuit of a suspect, risk of removal or destruction of evidence, and danger to the arresting officers or the public."

United States v. Maxi, 886 F.3d 1318, 1329 (11th Cir. 2018), cert. denied, No. 18-5901, 2018 WL 4283411 (U.S. Oct. 9, 2018) (quoting United States v. Edmondson, 791 F.2d 1512, 1515 (11th Cir.

---

[5] "In validating a warrantless search based on the existence of an emergency, as with any other situation falling within the exigent circumstances exception, the Government must demonstrate both exigency and probable cause." United States v. Holloway, 290 F.3d 1331, 1337 (11th Cir. 2002).

1986)). "[I]n an emergency, the probable cause element may be satisfied where officers reasonably believe a person is in danger." Holloway, 290 F.3d at 1338.

"[T]he burden of proving an exception to the warrant requirement lies with the Government." Holloway, 290 F.3d at 1337 (citing United States v. Jeffers, 342 U.S. 48, 51 (1951)). "[T]he exception 'must be applied carefully to each factual scenario.'" United States v. Santa, 236 F.3d 662, 669 (11th Cir. 2000) (quoting United States v. Lynch, 934 F.2d 1226, 1232 (11th Cir. 1991)).

**III.     ANALYSIS**

At the outset, the Court concludes (and the Government does not argue otherwise) that Vannavylaythong has standing to challenge the search. That is, despite the utility room's size, it appears Vannavylaythong resided in the utility room. Thus, Vannavylaythong possessed the right to refuse consent for the officer to enter and has standing to argue that the firearm should be suppressed. The Court further concludes that Vannavylaythong's act of attempting to close the door conveyed his explicit refusal to consent to the officers' entry. In fact, Captain Burch testified that he perceived the actions of Vannavylaythong as not consenting to the entry.

Captain Burch's presence at the utility room doorstep was constitutional. Kentucky v. King, 563 U.S. 469 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do."); United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006) ("[O]fficers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may."). But Vannavylaythong had "no obligation to open the door or to speak." King, 563 U.S. at 469–70. "At the Amendment's 'very core' stands 'the right of a man to retreat into his own home

and there be free from unreasonable governmental intrusion.'" Fla. v. Jardines, 569 U.S. 1, 6 (2013) (Scalia, J.) (quoting Silverman v. United States, 365 U.S. 505, 511 (1961)).

However, instead of permitting Vannavylaythong to close the door, Captain Burch pushed back, preventing the door from closing. During the hearing, Captain Burch testified that before he saw Vannavylaythong's arm reach toward the floor, he felt a force from the other side of the door trying to close it. At that point, he testified that he locked his arm to prevent the occupant from closing the door. Captain Burch testified that it was then that he saw Vannavylaythong's left arm reaching toward the bottom of the futon. Captain Burch exceeded the "firm line[,]" Payton, 445 U.S. at 590, by preventing Vannavylaythong from closing the door and entering the utility room.

### a. Exigent Circumstances Exception

The key inquiry is not a subjective one, but instead objective. United States v. Rodgers, 924 F.2d 219, 222 (11th Cir. 1991). Would a reasonable officer, knowing what Captain Burch knew, reasonably feel endangered such that entering the home without a warrant was necessary?

Officers did not consider Vannavylaythong a suspect or a violent person. Instead, officers believed Vannavylaythong was the victim's friend and merely wanted to interview him. Moreover, Captain Burch testified that he lacked any information that Vannavylaythong might be armed. Although he testified his senses were heightened given that officers had just recently encountered several people with multiple guns across the street, he did not have *reason* to believe Vannavylaythong possessed a weapon.

The Government argues that Vannavylaythong's act of attempting to close the door and his reach towards an unknown object created the exigent circumstance. In support, the Government cited, as the case most factually similar to the Vannavylathong case, United States v. Thompson,

7

2012 WL 2375541 (S.D. W.Va. June 22, 2012).[6] There, the District Court denied a motion to suppress because the officers' fear for their safety justified a warrantless entry. However, the facts in Thompson clearly differ from the present facts. Before entering the defendant's motel room, officers received a tip relaying information that: (1) the defendant was a known narcotics dealer; (2) the caller, who was with the defendant, feared for his or her safety; and (3) firearms were present on the defendant's person or in his motel room. Id. at *1. Officers also observed three individuals enter the motel room in the hours preceding the warrantless entry. With this information, officers approached a wide-open motel room door and entered the room without a warrant after speaking with only one occupant. Once inside, officers observed ammunition and asked the defendant to come out of the bathroom. The defendant exited and closed the bathroom door behind him. The officers re-opened the bathroom door to make sure no one else was present and observed a semi-automatic pistol.

The court in Thompson held that (1) the possibility that another individual was behind the bathroom door, coupled with (2) the knowledge that a gun may be located in the motel room, provided officers the justification to conduct a "cursory sweep of the bathroom to ensure no additional individuals were hiding there." Id. at *6. See id. ("Defendant deliberately closing the door behind him likely piqued officers' suspicions, including a reasonable belief that another [potentially armed] individual may be concealed in the bathroom."). In the present case, none of these circumstances existed, save for the fact that both defendants attempted to close his respective door.

The Court did not independently find, and the Government has not provided, any support where the exigent circumstances exception justified a warrantless entrance into a home where (1)

---

[6] Before ordering both parties to submit supplemental briefs, (see Doc. 25), the Court requested each party provide case citations in support of its position. This case was submitted via email to the Court.

the defendant was not suspected of a crime, (2) the defendant was not believed to be dangerous or violent, (3) there was no information that an occupant possessed a gun, and (4) there was no information that an occupant was in danger.

The only fact that supports Captain Burch's warrantless entry is Captain Burch's fear that Vannavylaythong was reaching for a gun. The basis for this fear was that Vannavylaythong attempted to close the door and then, after Captain Burch prevented the door from closing, he reached down with his left arm. Although Captain Burch's reaction may have been instinctive and in hindsight prudent, the Fourth Amendment requires the Court suppress the fruits of his entry.

## IV.     CONCLUSION

For the foregoing reasons, Vannavylaythong's motion to suppress (Doc. 16) is **GRANTED**.

**DONE** the 19th day of November 2018.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**